## BOB HOLLAND v. THE STATE.

### No. 4108. Decided December 10, 1908.

**1.—Murder—Evidence—Threat.**

Where upon trial for murder the threat, if made by the defendant under the circumstances of this case, was not directed at the deceased, nor even at any class of people which included the deceased; it being against a brother, (defendant not having a brother) and not against the deceased, who was a sister, was inadmissible in evidence. Following Godwin v. State, 38 Texas Crim. Rep., 466, and other cases.

**2.—Same—Charge of Court—Negligent Homicide.**

Upon trial for murder where the evidence for the State showed an intentional killing and shooting, and that of the defendant showed it to be accidental; that deceased was standing behind the door on the inside of the house and not visible, and that another person was standing in the door and declined to let him enter; that defendant shot through the door and killed his sister, with whom he had been quarreling a little while before, there was no error in the court's charge that the killing would not be negligent homicide but murder of the first or second degree; and this although the party standing in the door was included in the charge as one of the parties against whom defendant's intent to kill might have been directed.

Appeal from the District Court of Upshur. Tried below before the Hon. R. W. Simpson.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life.

The opinion states the case.

*Warren* and *Briggs,* for appellant.—On question of court's charge: Sparks v. State, 77 S. W. Rep., 811; Richards v. State, 35 Texas Crim. Rep., 38; 30 S. W. Rep., 805; Howard v. State, 58 S. W. Rep., 77. On question of threats, cases cited in opinion.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted for the murder of his sister, Ida Marable.

The evidence substantially discloses that on the evening preceding the homicide appellant stopped at the house where his sister and

another woman were, his sister being the visitor. A dispute and a war of words arose between appellant and deceased in regard to the conduct of the son of deceased. The boy had disobeyed his mother and appellant became somewhat angered with deceased for permitting such disobedience. The quarrel grew a little animated. The deceased got a pistol and appellant left. He was much angered and went off to get his gun. He went to his home, secured it and returned to the house where the women were, and finally shot his sister to death, firing one shot. Upon reaching the house where the homicide occurred he called for his sister; the other woman was standing in the door and declined to let him enter. He finally shot through the door, the load taking effect in his sister. After securing his gun, and en route on his return to the place where his sister was, he passed near the home of Mr. Joslin, and while near Joslin's residence fired his gun a time or two (twice Mr. Joslin says) and remarked that he had but one living brother and he intended to kill him. Appellant admitted firing the gun, but denied making the remark, and in fact the evidence shows that he had no brother; that he was the only son, the remainder of the children, deceased being one of them, were girls.

Exceptions were reserved to the introduction of the evidence of Joslin in regard to firing the gun and the imputed remarks. This remark of appellant, if made by him, was in the nature of a threat, not against the deceased, but against a brother which he did not have. We are of opinion that this testimony was inadmissible. The threat, if made by appellant, under the circumstances of this case, was not directed at the deceased, nor even at any class of people which included her. The authorities are quite harmonious in this State holding such testimony inadmissible. Godwin v. State, 38 Texas Crim. Rep., 466; Gaines v. State, 53 S. W. Rep., 623; Hall v. State, 42 Texas Crim. Rep., 444; 64 S. W., 248; Holley v. State, 39 Texas Crim. Rep., 301; 46 S. W., 39. In Godwin's case, supra, it was held that it is competent to show motive on the part of the accused to prove threats made by him against the deceased, although he may not have mentioned his name, if it could be reasonably gathered that deceased was included within the threat or that the threat was meant for deceased. General threats not directed towards the party slain or not of such character as to embrace such person are inadmissible. This has been followed in all subsequent cases decided by this court. Gregory v. State, 43 S. W. Rep., 1017, and Gregory v. State, 48 S. W. Rep., 578. Appellant's threat, if made by him as testified by Joslin, had no reference to the deceased and did not embrace her in any manner. In Holley's case, 39 Texas Crim. Rep., 301; Heffington's case, 41 Texas Crim. Rep., 313; 54 S. W., 755, and Hall's case, 42 Texas Crim. Rep., 444; 64 S. W., 248, it was held that evidence of indefinite threats was inadmissible. However, this threat, if made, was not a general one, but directed at the

brother of appellant, the evidence showing that he had no brother. The threats did not refer to the female members of the family. It may be questioned whether the testimony in regard to firing of the shots was admissible. If appellant fired the shots indicated along the public road, this might constitute a violation of the statute which prohibits firing of guns under such circumstances, but its relevancy to the question involved in the homicide is not apparent. Extraneous crimes are sometimes admissible when they tend to show intent, develop the res gestae or to connect the accused party with the offense for which he is being tried. It would seem this evidence did not have either effect. We, therefore, hold that this testimony was not admissible, especially in regard to the imputed remark of appellant. It might be stated, in this connection, that appellant, while admitting that he fired his gun a time or two, locates the firing at an entirely different place from that testified by Joslin. Of course, if somebody else should have fired the gun, accompanied by threats to kill his brother, it would in no wise be admissible.

The court charged the jury in regard to negligent homicide, and, among other things, in this connection, gave the following: "In this connection you are charged that if you shall find from the evidence beyond a reasonable doubt that the defendant intentionally fired a gun, same being a deadly weapon, into the residence of Elonzo Marable, with the intent to kill Ida and Lucretia Marable or to inflict on them or either of them some serious bodily injury which in its necessary or probable consequence might result in death, then you are instructed that defendant would be guilty of murder of the first or second degree, applying the facts in evidence to the law applicable to those offenses hereinbefore given you in charge, a killing under such circumstances would not be negligent homicide." It is urged this charge is erroneous in that it authorizes a conviction of murder in the first degree if appellant intended to kill Lucretia Marable and in doing so killed deceased. As given, we are of opinion that this objection to the charge is not well taken. Under the facts we are of opinion that it is not shown, and the testimony does not indicate that appellant intended to kill Lucretia Marable; that if he fired the shot with intent to kill anybody, it was his sister Ida and not Lucretia. Lucretia was plainly in sight of him while his sister Ida was standing behind the door on the inside of the house and not visible. Appellant's contention and his testimony is to the effect that his gun was accidentally discharged, and cogent evidence is introduced to show that in unbreeching the gun it would be accidentally discharged as occurred on the very night of the homicide in the hands of the officer. The officer having the gun in charge, after the arrest of appellant, went to unbreech it. It was discharged accidentally, killing a woman and wounding a boy. Now, under this state of the case, while we see no evidence authorizing the inclusion of Lucretia Marable in the charge, still the court was not directing the jury,

from this phase of the case, to convict of murder in any degree, but was simply informing them that if the gun was unlawfully discharged, the killing, though unintentional, would be or might be negligent homicide. Had the court directed the jury, in this connection, if appellant had shot at Lucretia and the load had taken effect upon his sister Ida, that it might be murder in the first degree, there would have been error. The rule in this State and under the authorities is well settled, that where a party shoots at another with malice and kills a third party, the killing would be of no higher offense than murder in the second degree, although the killing of the party intended to be killed might be murder of the first degree. But as we understand this charge, that issue was not charged upon by the court nor included in the charge criticised. The court was simply limiting the question of negligent homicide. We are, therefore, of opinion that, although the name of Lucretia Marable was included in the charge, it would not be such error as would require a reversal for this question. Of course, if appellant shot in the house with intent to kill his sister, it would relieve the case of any question of accidental shooting, and would even relieve any question of negligent homicide. An intentional shooting into a house for the purpose of killing an inmate would be burglary, and under such circumstances such killing would not be reduced to negligent homicide. This charge, as a whole, was fully favorable to appellant, but, as before stated, we are of opinion that this question was not in the case, for the facts for the State show an intentional shooting and killing, whereas the evidence for the appellant shows it to be accidental. We mention this, so that upon another trial this trouble may be avoided.

There are other questions in the case, but we deem them not of sufficient importance to review.

For the error indicated, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*